**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**

TYLER FIRE EQUIPMENT, LLC, AND TYLER FIRE
EQUIPMENT SERVICE CORP.,

                Plaintiffs,

-vs-

OSHKOSK CORP., PIERCE MANUFACTURING,
INC., HIGH PEAKS FIRE APPARATUS, LLC, AN-
THONY M. MASTROBATTISTA *individually and as
President of High Peaks Fire Apparatus, LLC*, DA-
VID MCALICE, *individually and as Regional Vice
President of Pierce Manufacturing, Inc.*, and DAN-
IEL A. OLSZANSKI, *individually and as Vice Presi-
dent of High Peaks Fire Apparatus, LLC*,

                Defendants;

DECISION AND ORDER

14-CV-6513-CJS

DAVID McALICE, *individually and as Regional Vice
President of Pierce Manufacturing, Inc.*, and
PIERCE MANUFACTURING, INC.,

                Counter-Claimants,

-vs-

TYLER FIRE EQUIPMENT, LLC, AND TYLER FIRE
EQUIPMENT SERVICE CORP.,

                Counter-Defendants.

**APPEARANCES**

For Plaintiffs/Counter-Defendants:        Robert Zarco, Esq.
                                              Gabriel Estadella, Esq.
                                              Himanshu M. Patel, Esq.
                                              Zarco Einhorn Salkowski & Brito, P.A.
                                              100 S.E. 2nd Street, 27th Floor
                                              Miami, FL 33131
                                              (305) 374-5418

|  | Donald W. O'Brien, Jr., Esq.<br>Woods Oviatt Gilman LLP<br>700 Crossroads Building<br>Two State Street<br>Rochester, NY 14614<br>(585) 987-2810 |
|---|---|
| For Defendants/Counter-Claimants Pierce Manufacturing, Inc.; David McAlice, *individually and as Regional Vice President of Pierce Manufacturing, Inc.*: | Carl J. Chiappa, Esq.<br>John J. Sullivan, Esq.<br>Hogan Lovells US LLP<br>875 Third Avenue<br>New York, NY 10022<br>(212) 918-3000 |
| For Defendant High Peaks Fire Apparatus, LLC; Anthony M. Mastrobattista *individually and as President of High Peaks Fire Apparatus, LLC*: | Jeffrey A. Siegel, Esq.<br>O'Connell & Aronowitz, P.C.<br>54 State Street<br>Albany, NY 12207-1885<br>(518) 462-5601 |
|  | Paul A. Feigenbaum, Esq.<br>Mazzotta Siegel & Vagianelis, P.C.<br>9 Washington Square<br>Albany, NY 12205<br>(518) 452-0941 |

## INTRODUCTION

**Siragusa, J.** This case is before the Court on four motions: (1) a motion seeking summary judgment filed on February 15, 2018, [ECF No. 118](), by Pierce Manufacturing, Inc. ("Pierce") and David McAlice ("McAlice") (collectively the "Pierce defendants"); (2) Pierce's and McAlice's application to exclude opinion testimony by Brian Hedges, Apr. 5, 2018, [ECF No. 126](); and two motions by plaintiffs Tyler Fire Equipment Service Corp. and Tyler Fire Equipment, LLC, (collectively "Tyler") for extensions of time to file a response to the motion to exclude Brian Hedges' testimony, [ECF No. 129,]() filed on April 10, and [ECF No. 130]() filed on April 11.

For the reasons stated below, the Court grants summary judgment to Pierce and McAlice, and denies as moot the Pierce defendants' motion to exclude testimony and Tyler's motions for extensions of time.

**BACKGROUND**

Tyler commenced this action by filing a complaint on September 5, 2014, [ECF No. 1](), and filed a second amended complaint on May 3, 2016, [ECF No. 76](), which is now the operative pleading.

The Second Amended Complaint (hereinafter "complaint") alleges the following causes of action against the moving defendants: (I) a violation of the Automobile Dealers' Day in Court Act, 15 U.S.C. §§ 1221–26 (2014); (III & IV) breach of contract; and (V) tortious interference with existing contractual relations, all arising out of the Pierce defendants' allegedly unlawful and fraudulent conduct toward Tyler concerning the marketing, sale, and service of fire and rescue trucks and related goods and equipment in the States of New York and Pennsylvania.

**STATEMENT OF FACTS**

Both sides have submitted statements of fact, which the Court summarizes below, while noting any disagreements between them. Pierce manufactures fire trucks and associated equipment, and Tyler is one of its dealers. Tyler Fire Equipment, LLC ("TFE") and Pierce were signatories to a dealer agreement dated May 1, 2000. TFE had been a dealer for Pierce since 1977. Tyler Fire Equipment Service, LLC ("Tyler Equip. Service") was never a party to a dealer agreement with Pierce.

TFE's territory included several counties in New York State, Pierce's biggest market for fire equipment. In 2008, Pierce removed five counties from TFE's territory, and by 2011, had identified TFE as a poorly performing dealer. TFE disputed that it was

performing poorly. At a meeting in 2011, Wayne Tyler, one of the owners of Tyler, spoke with Bobby Williams ("Williams"), a principle in Pierce, about finding a buyer for the business. They discussed some potential buyers: William O'Connor, Glick Fire Equipment Company, and Tim Olley.

### *Confidentiality Agreement*

In May 2011, McAlice signed a confidentiality agreement, drafted by TFE, which Tyler interpreted as being signed in McAlice's capacity as an officer of Pierce, thus binding Pierce in addition to McAlice individually. The confidentiality agreement, which was included with Pierce's statement of facts as Exhibit 20, precluded Pierce from divulging that "discussions are taking place concerning a possible acquisition of [Tyler] by [Pierce]…." However, Pierce never considered obtaining Tyler. The confidentiality agreement also required Pierce to "hold in confidence all information received from [Tyler] which is marked 'confidential' or 'proprietary' or which, being of a nature not readily so marked, is designated by *written* notice to be of a confidential nature…." Ex. 20 ¶ 2 (emphasis added).

### *Information Tyler Was Required to Provide Pierce per the Dealership Agreement*

The dealership agreement between TFE and Pierce required that TFE provide Pierce with data about its customers, sales, proposals, service, and employees. Pierce did not consider that information as being covered by the confidentiality agreement and contends that Tyler never provided "any documents marked or designated in writing as 'Confidential'" pursuant to the confidentiality agreement. Tyler disputes this claim, stating that in response to an interrogatory, it identified the information it provided to Pierce pursuant to the confidentiality agreement. That information is identified in interrogatory four as follows:

> 4. Identify all Confidential Information You provided to the Pierce Defendants pursuant to the Confidentiality Agreement as alleged in Paragraph 29 of Your Complaint, including but not limited to any service contracts, purchase orders, and customer lists You allege were provided to McAlice, as described in Paragraph 164 of Your Complaint.
>
> RESPONSE: Plaintiffs object to this Interrogatory to the extent that it mischaracterizes the allegations of the Complaint, to wit, Paragraph 29 refers to an agreement to furnish Confidential Information and does not discuss the exchange of such information. Notwithstanding and without waiving the foregoing objection, Plaintiffs state as follows:
>
> Plaintiffs provided Pierce and in particular, McAlice, with Confidential Information regarding the operation of Plaintiffs' business, including but not limited to, all sales information regarding any and all ongoing sales negotiations with current customers, and all service history and service plans with current service customers whether they signed a service contract or maintained an on-going service relationship with Plaintiffs without a contract both historical and up to date. In addition, Plaintiffs provided weekly and monthly updates to McAlice regarding sales and service agreements. Pierce and McAlice also had access to Plaintiffs' confidential business information through the PULSE program.
>
> Further, Pierce and McAlice regularly contacted Plaintiffs' field sales people and sales manager Steve Anderson to investigate current sales negotiations and pending customer orders.
>
> In addition to the foregoing, Plaintiffs provided Pierce and McAlice with information regarding the sale of their businesses pursuant to Paragraph 1 of the Confidentiality Agreement. Such information included the status of negotiations with potential buyers.
>
> Pursuant to FRCP 33(d), Plaintiffs will produce or make available for copying, at Pierce's expense, non-privileged documents evidencing the exchange of such Confidential Information.

Def.s' Ex. 18, Interrog. 4, [ECF No. 120-19](ECF No. 120-19).

Notwithstanding the above, Tyler concedes that "No one from Pierce ever revealed any information marked or designated in writing as 'Confidential' under the Confidentiality Agreement to any third party." Def.s' Statement of Facts ¶ 20; Tyler's Counter-Statement of Facts ¶ 20.

Tyler also concedes that neither Pierce nor McAlice ever discussed Tyler's negotiations with Municipal Equipment Services, Churchville, or O'Connor, with any third parties. Pierce first learned from Daniel Olszanski ("Olszanski"), that he was in discussions to purchase Tyler, and on October 30, 2013, Tyler presented a written offer to Olszanski and Anthony M. Mastrobattista ("Mastrobattista") for the apparatus segment of Tyler.[1]

The parties relate that rumors of Tyler's impending change of ownership started circulating in August 2013, when two of Tyler's employees left, citing the rumor that Tyler was closing as their reason. At about the same time, other employees left or were fired, but no mass exodus resulted. Tyler started receiving calls from vendors asking whether Tyler would remain in business or was being sold.

Pierce had sent calendars to Tyler's customers and those calendars did not show Tyler as the vendor, but rather a different dealer. This created confusion among Tyler's customers as to whether Tyler was remaining in business. By December 31, 2013, Olszanski told Tyler employees that he and Mastrobattista were potential buyers of the company.

On January 16, 2014, McAlice told Tyler that he would be traveling to certain fire departments in the Adirondacks with Olszanski, and that one of the purposes of the trip was to address concerns raised by the Salem and Plattsburgh District 3 fire departments about possible changes in their dealer representation. Tyler admits it knew Olszanski, a Tyler employee, would be accompanying McAlice, but not as a representative of High Peaks Fire Apparatus, LLC. Prior to McAlice's visit with the Salem Fire Department,

---

[1] Olszanski and Mastrobattista formed High Peaks Fire Apparatus, LLC, for the potential acquisition.

Olszanski had told Joe Weaver of that department that he and Mastrobattista were potential buyers of TFE. TFE acted as the intermediary for a sale of competing fire equipment in 2013. The trucks sold were similar to Pierce trucks.

Tyler Equip. Service's contracts with its customers were terminable without cause by either party. Further, they were not exclusive, and TFE was unaware of the identity of Tyler Equip. Service's customers. No Tyler Equip. Service customers breached their contracts with the company, although Tyler Equip. Service asserts that they did not renew their service contracts.

### STANDARD OF LAW

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, … demonstrate the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and "the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a) (2015). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew,* 75 F.3d 98, 107 (2d Cir. 1996) (citation omitted).

The burden then shifts to the non-moving party to demonstrate specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Id.* at 249. "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom

summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993). The parties may only carry their respective burdens by producing evidentiary proof in admissible form. Fed. R. Civ. P. 56(c)(1). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## ANALYSIS

### *Pierce Did Not Violate the Operative Terms of the Confidentiality Agreement (Count III of the Second Amended Complaint)*

Tyler argues that ambiguities in the confidentiality agreement signed with Pierce[2] require extrinsic evidence, with interpretation then falling to the factfinder. The first paragraph of the confidentiality agreement states that Tyler will supply confidential information to Pierce

> [A]ll on the following conditions:
>
> 1. The Undersigned shall not disclose the fact that discussions are taking place concerning a possible acquisition of the Company by the Undersigned unless the failure to disclose would, in the opinion of the Undersigned's counsel constitute a violation of any law, regulation or rule, or subject the Undersigned to civil or criminal liability.
>
> 2. The Undersigned agrees that from the date hereof, it will hold in confidence all information received from the Company which is marked "confidential" or "proprietary" or which, being of a nature not readily so marked, is designated by written notice to be of a confidential nature, ("Information"), and that the Information shall be used only for the contemplated purpose and shall not be disclosed to any third party. This shall be in effect until assigns or after sale of company to hold all information confidential.

Confidentiality Agreement *attached as* Ex. 20 to [ECF No. 120](ECF No. 120). The reference to "the Undersigned" is a reference to Dave McAlice of Pierce Mfg., Inc. The agreement was drafted

---

[2] McAlice signed the agreement and Tyler argues that by doing so, he bound Pierce to its terms.

by an agent of Tyler's and presented to McAlice who signed it unedited.[3]

Tyler raises the issue of apparently contradictory language in two "whereas" clauses preceding the numbered paragraphs. Tyler argues that paragraph one conflicts with the two whereas clauses thereby setting up an ambiguity for resolution by the fact-finder at trial. "However, statements in a whereas clause, even if in conflict with other provisions of the same contract, do not create rights beyond those arising from the contract's operative terms." *Matter of Legion of Christ, Inc. v. Town of Mount Pleasant*, 151 A.D.3d 858, 860 (N.Y. App. Div. 2nd Dep't 2017) (citations omitted). "[A]n expression of intent in a 'whereas' clause of an agreement between two parties may be useful as an aid in construing the rights and obligations created by the agreement, but it cannot create any right beyond those arising from the operative terms of the document." *Genovese Drug Stores, Inc. v. Conn. Packing Co.*, 732 F.2d 286, 291 (2d Cir. 1984).

Tyler cites to *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76 (2d Cir. 2002) in support of its argument that the conflict between the whereas clauses and paragraph one creates an ambiguity. That case is distinguishable, however. In *Int'l Multifoods Corp*, the contract provisions that created an ambiguity were in the main body of the contract, causing the Second Circuit to find that: "Although the caption and the content of Clauses 6.1 and 6.3 support Multifoods' argument, several other aspects of the language of the War Exclusion Clause bolster CU's position that Clause 6.2 excludes even peacetime seizures, and at a minimum suggest the existence of an ambiguity." *Id*. at 85–

---

[3] If the Court did find ambiguities, it could consider extrinsic evidence, bearing in mind that "the court should apply the interpretative rule that ambiguities in a contract are ordinarily construed against the drafter." *Chiquita Int'l Ltd. v. Liverpool & London S.S. Prot. & Indem. Ass'n*, 124 F. Supp. 2d 158, 164 (S.D.N.Y. 2000).

86. Here, the Court must construe the contract's meaning by the plain language of its operative terms. Contrary to Tyler's argument, the first paragraph prohibits disclosure by Pierce or its agent of any discussions taking place for the purchase of Tyler by Pierce and the language in the "whereas" clauses do not alter the plain meaning of paragraph one.

The confidentiality agreement also prohibited Pierce or its agent from disclosing information provided by Tyler and marked as confidential. Ex. 20 ¶ 2. Pierce contends that Tyler never provided it with information that fits within the second paragraph of the confidentiality agreement. Tyler, on the other hand, asserts it "provided confidential information to Mr. McAlice as set forth in its response to Interrogatory 4." Tyler Statement of Facts ¶ 19 (citing to Defendants' App Ex. 18 at Interrogatory 4). Interrogatory 4 states the following:

> 4. Identify all Confidential Information You provided to the Pierce Defendants pursuant to the Confidentiality Agreement as alleged in Paragraph 29 of Your Complaint, including but not limited to any service contracts, purchase orders, and customer lists You allege were provided to McAlice, as described in Paragraph 164 of Your Complaint.
>
> RESPONSE: Plaintiffs object to this Interrogatory to the extent that it mischaracterizes the allegations of the Complaint, to wit, Paragraph 29 refers to an agreement to furnish Confidential Information and does not discuss the exchange of such information. Notwithstanding and without waiving the foregoing objection, Plaintiffs state as follows:
>
> Plaintiffs provided Pierce and in particular, McAlice, with Confidential Information regarding the operation of Plaintiffs' business, including but not limited to, all sales information regarding any and all ongoing sales negotiations with current customers, and all service history and service plans with current service customers whether they signed a service contract or maintained an on-going service relationship with Plaintiffs without a contract both historical and up to date. In addition, Plaintiffs provided weekly and monthly updates to McAlice regarding sales and service agreements. Pierce and McAlice also had access to Plaintiffs' confidential business information throngh the PULSE program. Further, Pierce and McAlice regularly contacted Plaintiffs' field sales people and sales manager Steve Anderson to investigate current sales negotiations and pending customer orders.

> In addition to the foregoing, Plaintiffs provided Pierce and McAlice with information regarding the sale of their businesses pursuant to Paragraph 1 of the Confidentiality Agreement. Such information-included the status of negotiations with potential buyers. Pursuant to FRCP 33(d), Plaintiffs will produce or make available for copying, at Pierce's expense, non-privileged documents evidencing the exchange of such Confidential Information.

Tyler's response does not indicate that any of the confidential information provided by it to Pierce was "marked 'confidential' or 'proprietary' or which, being of a nature not readily so marked, is designated by *written* notice to be of a confidential nature…." Confidentiality Agreement ¶ 2 (emphasis added). Pierce has shown that Tyler will be unable to prove that Pierce violated the operative terms of the Confidentiality Agreement. Pierce is, therefore, entitled to judgment on that claim.

***The Automobile Dealer's Day in Court Act Is Not Applicable to The Relationship Between Tyler and Pierce (Count I of the Second Amended Complaint)***

The Automobile Dealer's Day in Court Act ("ADDCA"), 15 U.S.C. §§ 1221–25, "is an attempt to equalize, at least to some extent, the economic advantages which automobile manufacturers have over their dealers." *Hanley v. Chrysler Motors Corp.*, 433 F.2d 708, 710 (10th Cir. 1970). Tyler argues that the Act applies to the relationship between him and Pierce and that Pierce violated the Act's good faith provisions. Pierce contends that the Act is inapplicable to the agreement between a fire truck manufacturer and a dealer in fire trucks, such as the relationship between Pierce and Tyler.

ADDCA defines "automobile manufacturer" as a business enterprise "engaged in the manufacturing or assembling of passenger cars, trucks, or station wagons…." 15 U.S.C. § 1221(a). The Act does not further define "trucks." Several courts have analyzed the Act's application to various motor vehicles, such as motor homes, dump trucks, motorcycles, and snowmobiles, finding they all did not qualify as "passenger cars, trucks, or station wagons." W. Michael Garner, Franchise Distribution Law and Practice (Oct. 2018

update), § 14:6 ("the Act excludes snowmobiles, motorcycles, motor homes, construction equipment and articulated dump trucks") (footnotes omitted). As originally drafted, ADDCA "included 'other automotive vehicles' in addition to cars, trucks, and station wagons. The deletion was made in order to exclude 'transactions involving buses, tractors, motorcycles, and other transportation vehicles propelled by power.'" *Id.*

A statute should be interpreted according to the plain meaning of its words. *Tyler v. Douglas,* 280 F.3d 116, 123 (2d Cir.2001), *cert. denied,* 536 U.S. 906 (2002). Both parties have argued that the Court should also apply the canon of *noscitur a sociis*.[4] The Supreme Court explained this canon in *Yates v. United States*, 135 S. Ct. 1074 (2015), stating:

> As explained in *Gustafson v. Alloyd Co.,* 513 U.S. 561, 575, 115 S. Ct. 1061, 131 L.Ed.2d 1 (1995), we rely on the principle of *noscitur a sociis*—a word is known by the company it keeps—to "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress." (internal quotation marks omitted). See also *United States v. Williams,* 553 U.S. 285, 294, 128 S. Ct. 1830, 170 L.Ed.2d 650 (2008) ("a word is given more precise content by the neighboring words with which it is associated").

*Yates*, 135 S. Ct. 1074, 1085. In ADDCA, the words at issue are, in context: "passenger cars, trucks, or station wagons." Because Congress used "passenger" to modify "cars," and used "station wagons" after "trucks," and based on the synopsis of legislative history about the original draft of the bill, the Court concludes that it was Congress' intent for ADDCA to apply only to trucks that are analogous to passenger cars and station wagons. That interpretation would necessarily exclude fire trucks, which are more analogous to

---

[4] Latin for "it is known by its associates." NOSCITUR A SOCIIS, Black's Law Dictionary (10th ed. 2014).

the types of vehicles other courts have held are excluded from coverage under the Act.

Tyler posited at oral argument that in email correspondence, a Pierce employee referred to "fire apparatus" as "fire trucks," and in a responsive email from another Pierce officer is a caution that Pierce needs to be careful because the New York dealer laws are strict. Tyler's counsel argued that this shows even Pierce knew that fire trucks were included in ADDCA. The Court is unpersuaded. Consequently, Pierce is entitled to judgment on Count I of the second amended complaint.

### *Tyler Equip. Services Tortious Interference with Contract Claim (Count V of the Second Amended Complaint)*

The parties agree that all the contracts Tyler Equp. Services used were terminable at will by either party. New York law is clear: "A contract terminable at will cannot be the basis for a tortious interference with contract claim." *AIM Int'l Trading, L.L.C. v. Valcucine S.p.A.*, No. 02 CIV. 1363 (PKL), 2003 WL 21203503, at *5 (S.D.N.Y. May 22, 2003) (citations omitted). Therefore, on this claim, Pierce is also entitled to judgment.

### *Breach of the Dealership Agreement (Count IV of the Second Amended Complaint)*

Tyler alleges that Pierce breached the dealership agreement between the two by failing to fulfill its obligation to provide annual service standards for review and acceptance and unreasonably withholding consent to transfer its interest in the dealership agreement to another party.

In his deposition, Wayne Tyler, the owner of Tyler, was asked the following question and gave the following response:

> Q. So just to be clear, you're not denying that Pierce provided Tyler Fire Equipment with sales goals; correct?
>
> A. They provided us with sales goals, yes.

Tyler Dep. 41:3–6, [ECF No. 120-5](ECF No. 120-5). At oral argument, Tyler argued that notwithstanding

this answer, Tyler never *agreed* to the sales goals. Pierce responded that Tyler never objected to the sales goals, and that he had a chance to do so when he and McAlice met on sales goals. Tyler Dep. 44:6–19. Pierce has shown that Tyler will be unable to prove a breach of that portion of the dealer agreement.

With respect to the rejection of potential buyers, the dealer agreement states:

> Any transfer or attempted transfer by Dealer without the prior written consent of Pierce of: any interest in, or right, privilege or obligation under this Agreement; or of the principal business assets of Dealer; or of the direct or indirect ownership or operating management of Dealer, except that consent to changes in indirect ownership or operating management shall not be unreasonably withheld.

Dealership Agreement § 6.2(c)(i) *attached as* Exhibit 19 *to* Pierce Local Rule 56 Statement, Feb. 15, 2018, ECF No. 120. The clause concerning unreasonably withholding consent applies to any "changes in indirect ownership or operating management." *Id.* Tyler does not allege that he was attempting only to change "indirect ownership or operating management." Thus, under New York law, "in the absence of explicit contractual language stating that a party may not unreasonably withhold consent, parties may withhold consent for any reason or no reason, and that no implied obligation to act in good faith exists to limit that choice." *Teachers Ins. & Annuity Ass'n of Am. v. Wometco Enterprises, Inc.*, 833 F. Supp. 344, 349 (S.D.N.Y. 1993). Thus, on this point, Pierce has also shown entitlement to judgment.

## CONCLUSION

The Court determines that no material factual disputes have been presented in the parties' papers, and that Pierce Manufacturing, Inc. and David McAlice have shown entitlement to judgment. Accordingly, the Court grants the Pierce defendants' motion for summary judgment, ECF No. 118, and directs the Clerk will enter judgment for Pierce

Manufacturing, Inc. and David McAlice. Further, the Court denies as moot ECF No. 126, ECF No. 129, and ECF No. 130. The Clerk will not close the case, as other defendants remain pending.

DATED: June 21, 2019
   Rochester, New York

                /s/ Charles J. Siragusa
                CHARLES J. SIRAGUSA
                United States District Judge